IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

O'QUINN PAUL LAMONT PURVIS,

      **Plaintiff,**

    **v.**                                            **Civ. No. 21-716 MV/JFR**

RAFAEL MARIN, JOSE MARIN,
ROBERT MONTOYA, JOSHUA BAKER,
PABLO MONTOYA, AMY PEREA,
GEROGINA MARTINEZ, and FNU Rodregus,

      **Defendants.**

## MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

**THIS MATTER** is before the Court by Order of Reference[1] in accordance with 28

U.S.C. §§ 636(b)(1)(B), (b)(3) and *Va. Beach Fed. Sav. & Loan Ass'n v. Wood*, 901 F.2d 849

(10th Cir. 1990).  Doc. 15.  On March 3, 2022, Defendant Rafael Marin, filed his *Motion to*

*Dismiss Plaintiff's Complaint* ("Motion") pursuant to Fed. R. Civ. P. 12(b)(6).  Doc. 20.

Plaintiff, who is proceeding pro se, responded in opposition on April 4, 2022 (Doc. 23), and

Defendant replied on April 19, 2022 (Doc. 25).  The Motion is fully briefed.  Doc. 26.  For the

reasons that follow, the Court recommends that the presiding judge **GRANT** Defendant's

Motion and **DISMISS WITH PREJUDICE** Plaintiff's claims against him.

At the outset, the Court notes that pleadings from pro se litigants are construed liberally,

but pro se litigants are obligated to comply with the rules of civil procedure.  *Ogden v. San Juan*

*Cty.*, 32 F.3d 452, 455 (10th Cir. 1994); *see also Garcia v. Cole*, 428 F.Supp.3d 644, 649

---

[1]    By an Order of Reference filed February 7, 2022 (Doc. 15), the presiding judge referred this matter to the undersigned to conduct hearings as warranted and to perform any legal analysis required to recommend an ultimate disposition of the case.

(D.N.M. 2019) (noting that pleadings from pro se litigants are held "to a less stringent standard than applied to formal pleadings drafted by lawyers." (alteration, internal quotation marks, and citation omitted)).  "[I]f the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements."  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  "The broad reading of the plaintiff's complaint does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based."  *Id.*  And finally, the Court will not "assume the role of advocate for the pro se litigant."  *Id.*

## I. BACKGROUND

### A.    Plaintiff's Factual Allegations

Plaintiff is an inmate at the New Mexico Corrections Department.  Doc. 1 at 2.  On July 30, 2021, he filed a *Complaint for Violation of Civil Rights* ("Complaint"), against Defendant and others.  Doc. 1.  Therein, as relevant here, he alleges as follows.

On September 28, 2020, as Plaintiff was walking down the street in the very early morning, Defendant, who was driving a law enforcement vehicle, pulled over and initiated contact with Plaintiff through the passenger window by asking Plaintiff his name.  *Id.* at 16.  Plaintiff responded by stating his last name, at which point Defendant responded, "wate [sic] right ther [sic] I got something to read you."  *Id.*  Plaintiff replied, "No I'm good.  I know my rights.  Do you have a warrant?  If not, I'm going to keep walking."  *Id.*  Defendant did not respond, which, in Plaintiff's view, indicated he did not have a warrant, and Plaintiff kept walking.  *Id.*  Defendant continued driving and again pulled over, apparently ahead of Plaintiff.

*Id.* Defendant shouted at Plaintiff as Plaintiff walked by Defendant's vehicle. *Id.* Plaintiff heard the vehicle door slam and "more shouting," and frightened, Plaintiff turned around. *Id.*

As Defendant approached Plaintiff, he had his hand on his gun, which was still in its holster, and he continued to yell. *Id.* at 17. Plaintiff told Defendant that he was "doing nothing wrong by walking," and that he was "feeling harassed and thre[a]ten[ed]." *Id.* Plaintiff again asked if Defendant had a warrant, and Defendant informed him that he did not but asked Plaintiff, "Did [you] know it was agenst [sic] the law not to stop when told?" *Id.* Defendant stated that he had something he wanted to read Plaintiff once another officer arrived. *Id.* Plaintiff replied "no," reiterated his fear, turned around, and kept walking. *Id.* About ten seconds later "something or someone" tried to grab Plaintiff from behind "with no not[i]fication given." *Id.* Plaintiff "bolted." *Id.* After jumping over a fence, Plaintiff looked back and saw that Defendant had turned around and was no longer following him. *Id.*

**B.      The Claims in Plaintiff's Complaint**

Plaintiff filed his Complaint on July 30, 2021. *Id* at 1. As the bases for bringing his Complaint against Defendant, Plaintiff first lists the Fourth and Fourteenth Amendments of the United States Constitution, for "search and seizure." *Id.* at 16. He next invokes "Title 18 § 242" for "deprivation of rights under color of law." Doc. 1 at 16. The Court believes this is a citation to 18 U.S.C. § 242, a statute that makes it a crime for a person acting under color of any law to willfully deprive a person of a right or privilege protected by the Constitution or laws of the United States. This criminal statute, however, does not create a private right of action, and thus, insofar as Plaintiff seeks relief under it, his claim against Defendant should be dismissed. *See Larsen v. Larsen*, 671 F. Supp. 718, 719 (D. Utah 1987) (dismissing a civil complaint seeking relief under 18 U.S.C. § 242 because the statute does not create a private right of action); *see*

*also Lollis v. Fransein*, No. 15-CV-352, 2015 WL 4031684, at *2 (N.D. Okla. July 1, 2015)

("There is no private civil right of action for a violation of 18 U.S.C. § 242, which is a criminal

statute that provides for criminal penalties for certain civil rights deprivations."). Likewise,

Plaintiff invokes "Title 18 Appendix § 41," for "search and seizure" which the Court interprets

as citing Federal Rule of Criminal Procedure 41, governing searches and seizures through

warrants. Doc. 1 at 16. To the extent Plaintiff intends this to form a discrete claim against

Defendant, it should be dismissed. *See Avila v. Doe*, No. 16-CV-1831, 2017 WL 448313, at *3

n.2 (D. Nev. Feb. 1, 2017) (noting the inapplicability of the Federal Rules of Criminal Procedure

to § 1983 actions). Plaintiff also states that his claims are based on "harassment and police

brutelity [sic]" and "fauls [sic] imprisonment."[2] Doc. 1 at 16. The Court will interpret the first

statements as allegations of violations of Plaintiff's Fourth Amendment rights, *see Graham v.

Connor*, 490 U.S. 386, 394 (1989) ("Where . . . the excessive force claim arises in the context of

an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking

the protections of the Fourth Amendment."); *Burden v. Wood*, 200 F. App'x 806, 807 (10th Cir.

2006) (noting that the district court construed a pro se litigant's § 1983 claim for police brutality

as one for excessive force), and the latter statement as an allegation of a violation of either

Plaintiff's Fourth or Fourteenth Amendment rights, *see Mondragon v. Thompson*, 519 F.3d 1078,

1082 (10th Cir. 2008) (discussing § 1983 false arrest and false imprisonment claims under the

Fourth and Fourteenth Amendments). In sum, then, all of Plaintiff's claims are brought pursuant

---

[2]         "Generally, police harassment, without more, cannot form a basis for a § 1983 cause of action. To be actionable, the harassment must violate a recognized constitutional right." *Lightfeather v. City of Lincoln*, No. 20-CV-3118, 2021 WL 2077680, at *3 (D. Neb. May 24, 2021) (internal quotation marks and citations omitted); *see also Bacon v. Patera*, 772 F.2d 259, 264-65 (6th Cir. 1985). Plaintiff appears to group his claims of police harassment and brutality into a single claim. Doc. 1 at 16. Because police harassment does not form a claim standing alone, the Court collapses it into his claim of police brutality and analyzes that claim through the lens of an alleged violation of Plaintiff's Fourth Amendment rights.

to the Fourth or Fourteenth Amendments, for violations of his right against unreasonable searches and seizures, the use of excessive force, and false imprisonment.

## II. LEGAL STANDARDS

### A.    Law Governing Defendant's Motion

Rule 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Under this rule, all well-pled factual allegations are accepted as true, conclusory allegations or those otherwise lacking support are not accepted, and the Court does not consider anything aside from the pleading. *Garcia*, 428 F.Supp.3d at 650 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) (noting "that a court should consider no evidence beyond the pleadings on a Rule 12(b)(6) motion to dismiss."). The rule requires the Court "to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (internal quotation marks and citations omitted). "A claim should be dismissed where it is legally or factually insufficient to state a plausible claim for relief." *Garcia*, 428 F.Supp.3d at 650. A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall*, 935 F.2d at 1110.

### B.    Civil Actions for Deprivation of Rights

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983.  "To state a claim under § 1983, a plaintiff must allege the violation of a right

secured by the Constitution and laws of the United States, and must show that the alleged

deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S.

42, 48 (1988)."  "The traditional definition of acting under color of state law requires that the

defendant in a § 1983 action have exercised power possessed by virtue of state law and made

possible only because the wrongdoer is clothed with the authority of state law." *Id.* at 49

(internal quotation marks and citation omitted).

### III. ANALYSIS

Defendant raises two grounds for relief in his Motion.  First, Defendant argues that

Plaintiff has not pled any facts that support a claim against him in his official capacity.  Doc. 20

at 2-3.  Next, Defendant argues that, assuming Plaintiff brings his suit against Defendant in his

individual capacity, he is shielded by the doctrine of qualified immunity.  *Id.* at 3-8.  The Court

notes that, in his Complaint, Plaintiff appears to bring claims against Defendant in both his

individual and official capacities, as he fills in both applicable boxes under Defendant's name.

Doc. 1 at 2; *see* Civil Pro Se Form 14 ("Complaint for Violation of Civil Rights (Prisoner)").

Puzzlingly, however, in addition to filling in both boxes, Plaintiff also circles the words "official

capacity."  Doc. 1 at 2.  Therefore, because it appears that Plaintiff attempts to invoke both

individual and official capacity theories of liability, the Court will address each of Defendant's

arguments in turn.

Plaintiff responds to the Motion by arguing that Defendant "has not filed or su[b]mitted a

proper response to the Complaint."  Doc. 23 at 1.  However, once a defendant files a motion to

dismiss under Rule 12(b)(6), an answer need not be filed, because the filing of such motion

"toll[s] the time to answer." *Marquez v. Cable One, Inc.*, 463 F.3d 1118, 1120 (10th Cir. 2006).

Defendant replies to Plaintiff's response by reiterating his arguments for qualified immunity. Doc. 25 at 3-4.

**A.      Plaintiff Does Not Plead Facts Sufficient to Sustain a Claim Against Defendant in His Official Capacity**

"Suing individual defendants in their official capacities under § 1983 . . . is essentially another way of pleading an action against the county or municipality they represent." *Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir. 2010). Thus, the standard of liability applicable to official capacity claims is that applicable to counties and municipalities. *See id.* To state a claim for municipal liability, the facts alleged, if true, must establish (1) a constitutional violation by a municipal employee, (2) the existence of an official custom or policy, and (3) a direct causal link between the custom or policy and the violation alleged. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *see also Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010); *Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993). Plaintiff's Complaint does not meet this standard. While he does allege a constitutional violation by Defendant, he does not allege that Defendant acted pursuant to an official custom or policy. Necessarily, Plaintiff cannot show a causal connection between an official custom or policy and the violation he alleges, as the second requirement for municipal liability is missing.

For these reasons, the Court recommends that the presiding judge grant Defendant's Motion and dismiss Plaintiff's claim against Defendant in his official capacity for failure to plead a claim upon which relief can be granted. The Court turns to Plaintiff's claim against Defendant in his individual capacity.

**B.      Defendant is Entitled to Qualified Immunity**

"The qualified-immunity doctrine protects public employees from both liability and from the burdens of litigation arising from their exercise of discretion." *Cummings v. Dean*, 913 F.3d

7

1227, 1239 (10th Cir. 2019) (internal quotation marks and citation omitted).  A qualified-

immunity defense may be raised at any time.  *MacArthur v. San Juan Cty.*, 495 F.3d 1157, 1162

(10th Cir. 2007).  "When a defendant raises a qualified-immunity defense, the onus is on the

plaintiff to demonstrate (1) that the official violated a statutory or constitutional right, and (2)

that the right was clearly established at the time of the challenged conduct."  *Cummings*, 913

F.3d at 1239 (emphasis, internal quotation marks, and citations omitted).  According to the

Supreme Court, lower courts are "permitted to exercise their sound discretion in deciding which

of the two prongs of the qualified immunity analysis should be addressed first in light of the

circumstances of the particular case at hand."  *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

As illustrated below, the Court begins with the first prong, and does not reach the second prong

because Plaintiff has not demonstrated that Defendant violated a protected right.

     *1.    Search and Seizure*

The Fourth Amendment provides that

> [t]he right of the people to be secure in their persons, houses, papers, and effects,
> against unreasonable searches and seizures, shall not be violated, and no Warrants
> shall issue, but upon probable cause, supported by Oath or affirmation, and
> particularly describing the place to be searched, and the persons or things to be
> seized.

U.S. Const. amend. IV.  According to the Supreme Court, "not all personal intercourse between

policemen and citizens involves 'seizures' of persons.  Only when the officer, by means of

physical force or show of authority, has in some way restrained the liberty of a citizen may we

conclude that a 'seizure' has occurred."  *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968).  "When an

officer does not apply physical force to restrain a suspect, a Fourth Amendment seizure occurs

only if (a) the officer shows his authority; and (b) the citizen submits to the assertion of

authority."  *United States v. Salazar*, 609 F.3d 1059, 1064 (10th Cir. 2010) (quoting *California v.*

*Hodari D.*, 499 U.S. 625-26 (1991) (alteration and internal quotation marks omitted)).

The Court first addresses the course of contact Plaintiff claims he had with Defendant.  In his Complaint, Plaintiff alleges that nearly all of his contact with Defendant was verbal.  The only allegation of physical contact present during his encounter with Defendant is found in his statement that "something or someone" tried to grab him from behind "with no not[i]fication given."  Doc. 1 at 17.  Even assuming this contact was from Defendant—which is unclear from the Complaint—it does not amount to the physical force necessary for a seizure under the Fourth Amendment: "A person is seized by the police and thus entitled to challenge the government's action under the Fourth Amendment when the officer, by means of physical force or show of authority, terminates of restrains his freedom of movement, through means intentionally applied."  *Brendlin v. California*, 551 U.S. 249, 254 (2007) (emphasis, internal quotation marks, and citations omitted).  In this case, Plaintiff states that he "bolted" and "ran and made it over a fence," and that Defendant turned around and ceased following him.  Doc. 1 at 17.  Plaintiff's freedom of movement was never restrained because he never ceased moving, and "there is no seizure without actual submission; otherwise there is at most an attempted seizure, so far as the Fourth Amendment is concerned."  *Brendlin*, 551 U.S. at 254.  Indeed, "a fleeing man is not seized until he is physically overpowered."  *Id.*  Even in the absence of physical contact alleged, Plaintiff never submitted to authority; he ran away, and therefore was not seized under the Fourth Amendment.  *See id.* at 262 (stating that an individual "may submit to authority" by "sitting in a chair" and "not getting up to run away").

However, Plaintiff still claims that his encounter with Defendant was transformed into a seizure because he did not feel free to leave.  Doc. 1 at 22-24.  This does not alter the Court's analysis.  In the Tenth Circuit, there are three categories of police-citizen encounters:

> (1) consensual encounters which do not implicate the Fourth Amendment; (2) investigative detentions which are Fourth Amendment seizures of limited scope and

> duration and must be supported by reasonable suspicion of criminal activity; and
> (3) arrests, the most intrusive of Fourth Amendment seizures and reasonable only
> if supported by probable cause.

*United States v. Torres-Guevara*, 147 F.3d 1261, 1264 (10th Cir. 1998) (alterations, internal

quotation marks, and citation omitted).  Here, the only category at issue is the second: whether

Plaintiff's encounter with Defendant was an investigatory detention, and therefore a seizure

under the Fourth Amendment, as Plaintiff alleges.  Doc. 1 at 22-24.  A few guiding principles

answer this question.  The Supreme Court has made "clear that a seizure does not occur simply

because a police officer approaches an individual and asks a few questions."  *Florida v. Bostick*,

501 U.S. 429, 434 (1991).  An encounter with police only becomes a seizure if it involves

"physical force or show of authority such that a reasonable person would not feel free to decline

the officer's requests or terminate the encounter."  *United States v. Lopez*, 443 F.3d 1280, 1283

(10th Cir. 2006) (citing *Bostick*, 501 U.S. at 439).

     The Court has already determined that if there was indeed physical interaction between

Plaintiff and Defendant—which is unclear—it was not the physical force necessary to constitute

a seizure.  Assuming without deciding that Defendant showed force in his verbal interaction with

Defendant, there is no question that he did not seize Plaintiff.  Plaintiff did not comply with

Defendant's requests, and he terminated the encounter.  Doc. 1 at 16-17.  The Court understands

that Plaintiff claims he did not feel free to leave—but he did so anyway.  *Id.* at 17, 22-24.  There

is not a seizure within the meaning of the Fourth Amendment when an individual flees "and

continues to flee."  *Hodari D.*, 499 U.S. at 626.  Thus, where an individual does not submit to an

officer's approach and runs away, he is not seized until he is apprehended.  *Id.*; *United States v.*

*Morgan*, 936 F.2d 1561, 1566 (10th Cir. 1991); *e.g.*, *United States v. Jeter*, 721 F.3d 746, 752-53

(6th Cir. 2013) (holding that an individual's brief pause to interact with officers who approached

him was not a submission to authority where the individual ignored the officer's requests, and

that he was not seized because he fled); *United States v. Valentine*, 232 F.3d 350, 359 (3d Cir. 2000) ("Even if [an individual] paused for a few moments and gave his name, he did not submit in any realistic sense to the officers' show of authority, and therefore there was no seizure until after [an officer] grabbed him."); *United States v. Sealey*, 30 F.3d 7, 10 (1st Cir. 1994) (holding that even if an officer's question to an individual constituted a show of authority, refusing to submit and running away did not constitute a seizure until the individual was apprehended); *United States v. Washington*, 12 F.3d 1128, 1132 (D.C. Cir. 1994) (holding that a driver may not feel free to leave when an officer activates his vehicle's sirens and orders the driver to stop, but the driver is not seized if he flees); *see also United States v. Garrette*, No. 17-CR-22, 2017 WL 3337258, at *2 (N.D. Fla. Aug. 4, 2017) (collecting cases). Plaintiff was never seized by Defendant.

For these reasons, the Court concludes that Defendant did not violate Plaintiff's Fourth Amendment right to be free from unreasonable search[3] and seizure and recommends that the presiding judge grant Defendant's Motion and dismiss this claim on the basis of qualified immunity.

2.    *Excessive Force*

The Supreme Court has held that an official's use of excessive force falls within the contours of the Fourth Amendment's prohibition on unreasonable seizures. *See Graham*, 490 U.S. at 395. Specifically, in *Graham*, the Court clarified that "*all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Id.* For the reasons already articulated, the Court has concluded that

---

[3]    In the interest of clarity, the Court notes that while Plaintiff uses the term "search," there are no facts in his Complaint that allege Defendant performed a search of his person or his belongings.

Plaintiff was not seized by Defendant.  Necessarily, then, Defendant could not have employed excessive force on Plaintiff.

For this reason, the Court recommends the presiding judge grant Defendant's Motion and dismiss this claim on the basis of qualified immunity.

3.    *False Imprisonment*

False Imprisonment Claims can arise under the Fourth Amendment or the Fourteenth Amendment of the United States Constitution.  *Mondragon*, 519 F.3d at 1082.  Plaintiff raises both amendments in his Complaint against Defendant, so the Court will look to each to see which, if either, apply.  Doc. 17 at 16.  Which amendment applies depends on the timing of the conduct alleged.  According to the Tenth Circuit,

> a plaintiff who claims that the government has unconstitutionally imprisoned him has at least two potential constitutional claims.  The initial seizure is governed by the Fourth Amendment, but at some point after arrest, and certainly by the time of trial, constitutional analysis shifts to the Due Process Clause.  If he has been imprisoned without legal process he has a claim under the Fourth Amendment analogous to a tort claim for false arrest or false imprisonment.  If he has been imprisoned pursuant to legal but wrongful process, he has a claim under the procedural component of the Fourteenth Amendment's Due Process Clause analogous to a tort claim for malicious prosecution.

*Mondragon*, 519 F.3d at 1082 (internal quotation marks and citation omitted).  Plaintiff's claims against Defendant pertain only to their encounter, at which time Plaintiff fled and was not arrested.  Thus, the Fourteenth Amendment is not at play here.  *See id.*  Likewise, the Court has determined that Plaintiff was not seized by Defendant, rendering a Fourth Amendment claim for false imprisonment unmeritorious as well.  *See id.*

For these reasons, the Court concludes that Defendant did not falsely imprison Plaintiff in violation of the Fourth of Fourteenth Amendments and recommends that the presiding judge grant Defendant's Motion and dismiss this claim on the basis of qualified immunity.

**C.      Plaintiff Should Not Be Given Leave to Amend His Complaint Against Defendant**

The Court recognizes the Tenth Circuit's general rule to permit inmates proceeding pro se leave to amend if it is possible that pleading defects can be cured or a plausible claim for relief stated. *Reynoldson v. Shillinger*, 907 F.2d 124, 126 (10th Cir. 1990). However, the Tenth Circuit permits dismissal of such cases with prejudice if the futility of amendment is apparent. *Fleming v. Coulter*, 573 F. App'x 765, 769 (10th Cir. 2014) (citing *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 806 (10th Cir. 1999)). As discussed above, Plaintiff's claims against Defendant fail because he was never apprehended by Defendant; Plaintiff was not seized. Likewise, Plaintiff's Complaint fails to allege that Defendant acted pursuant to an official custom or policy, and therefore Plaintiff cannot show a causal connection between an official custom or policy and the violations he alleges—a requirement for his claims against Defendant in his official capacity. "A county or sheriff in his official capacity cannot be held liable for constitutional violations when there was no underlying constitutional violation by any of its officers." *Martinez v. Beggs*, 563 F.3d 1082, 1091 (10th Cir. 2009) (internal quotation marks and citation omitted). Because Plaintiff cannot establish any of his underlying constitutional claims against Defendant in his individual capacity, it follows that his claims against Defendant in his official capacity will fail as well. *See id.*

Thus, the Court recommends that all of Plaintiff's claims against Defendant be dismissed with prejudice, as any amendments to his Complaint would prove futile because it would again be subject to dismissal. *See Weinstein v. U.S. Air Force*, 468 F. Supp. 2d 1366, 1374 (D.N.M. 2006) ("A proposed amendment to a complaint is futile if it would be subject to dismissal for any reason, including that the amendment would not survive . . . a motion to dismiss.").

## IV. CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the Court recommends that the presiding judge **GRANT**

Defendant's Motion and **DISMISS WITH PREJUDICE** all claims against Defendant in his

official and individual capacities.

---

**THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

---

**JOHN F. ROBBENHAAR**
United States Magistrate Judge